**NOT FOR CITATION**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JIMMY A. LAZO, | No. C 06-2732 JF (PR) |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| KEN CLARK, Warden, | |
| Respondent. | |

Petitioner, a state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for robbery. The Court found that the petition stated five cognizable claims and ordered Respondent to show cause why the petition should not be granted. Respondent filed an answer addressing the merits of the petition, and Petitioner filed a traverse. Having reviewed the papers and the underlying record, the Court concludes that Petitioner is not entitled to relief based on the claims presented and will deny the petition.

\\\

\\\

\\\

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.06\Lazo732den

# BACKGROUND[1]

On August 5, 2003, near midnight, Guadalupe Maguana was walking home from work. When Maguana was near the intersection of 24th Street and South Van Ness, appellant tapped her on the back. He said "I want this" and snatched two necklaces from Maguana's neck. Appellant started to flee. Maguana noticed a police car nearby and she yelled for help. Appellant returned to Maguana and told her "no, don't do that." He then ran away again.

San Francisco Police Officers Angela Rodriguez and Nick Birco were on patrol that night when they noticed appellant and Maguana struggling. Rodriguez heard Maguana yell for help and saw appellant run away. The officers gave chase and found appellant hiding behind a car less than two minutes later. He had Maguana's necklaces in his hand. Maguana identified appellant in a show-up.

Other officers transported appellant to a police station. While waiting to be booked, appellant yelled obscenities and racial epithets at Officer Rodriguez. When Officer Mario Molina arrived at the station, appellant calmed down immediately. Some time after the incident, appellant's friend, Rene Gutierrez, approached Maguana. Gutierrez told her appellant had made a mistake and that he was sorry.

Based on these facts, an information was filed charging appellant with second degree robbery. As is relevant here, the information also alleged appellant had one prior strike and one prior serious felony conviction. ([Cal. Penal Code] §§ 1170.12, subd. (c), 667, subd. (a).) The case proceeded to a jury trial where the prosecution presented the evidence set forth above. Appellant testified in his own defense. He did not deny that he took Maguana's chains; however, he claimed he was so intoxicated that he did not remember the crime.

At trial appellant testified that he went to a bar on the night in question where he drank about nine beers. He left the bar and met a friend named Micoya who had some joints. Appellant and Micoya smoked two and one-half to three joints. "After [appellant] was loaded," he asked Micoya what Micoya had given him. Micoya told appellant the joints contained PCP. Appellant said he "blacked out" "got lost" and "blanked out" after smoking the joints. The next thing he remembers, he was at the police station. He asked the officers why he was in jail. They laughed at him and told him he had committed a robbery. Appellant tried to buttress his defense with testimony from his wife and Rene Gutierrez, both of whom said appellant had a history of smoking PCP.

In rebuttal, the prosecution presented testimony from Sergeant Gavin McEachern, who was an expert in the symptoms exhibited by those under the influence of PCP. McEachern said that based on the facts of this case, he did not

---

1. The relevant facts are set forth in the unpublished opinion of the California Court of Appeal, First Appellate District, People v. Jimmy Lazo, No. A107276 (August 31, 2005); Respondent's Exhibit E at 1-3.

> believe appellant was under the influence of PCP when he committed the crime. The prosecution also presented testimony from Officer Molina who booked appellant at the police station on the night in question. Molina said appellant was coherent and reasonable and that he exhibited no objective symptoms of PCP use. The jurors considering this evidence convicted appellant of robbery. In a court trial that followed, the court found the prior conviction allegations to be true. After the court sentenced appellant to 11 years in prison, he filed [his] appeal.

Petitioner appealed his judgment and conviction. The California Court of Appeal affirmed the judgment on August 31, 2005. The California Supreme Court denied a petition for review on December 14, 2005. Petitioner filed the instant federal petition on April 26, 2006.

**DISCUSSION**

**A.     Standard of Review**

Because the instant petition was filed after April 24, 1996, it is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), which imposes significant restrictions on the scope of federal habeas corpus proceedings. Under AEDPA, a federal court cannot grant habeas relief with respect to a state court proceeding unless the state court's ruling was "contrary to, or an involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.06\Lazo732den                3

facts of the prisoner's case." Id. "[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409. The "objectively unreasonable" standard does not equate to "clear error" because "[t]hese two standards . . . are not the same. The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

A federal habeas court may grant the writ it if concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). The court must presume correct any determination of a factual issue made by a state court unless petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**B.     Petitioner's Claims**

1. <u>Trial Court's Failure to Instruct the Jury Sua Sponte Pursuant to CALJIC Nos. 2.71 and 2.71.7.</u>

Petitioner claims that the trial court violated his constitutional rights to due process, a fair trial, and a jury trial under the Sixth and Fourteenth Amendments by failing to instruct the jury <u>sua sponte</u> pursuant to CALJIC numbers 2.71[2] and 2.71.7.[3] Petition at 19. Petitioner alleges that the

---

2.     CALJIC No. 2.71 states:

"An admission is a statement made by [a] [the] defendant which does not by itself acknowledge [his] [her] guilt of the crime[s] for which the defendant is on trial, but which

trial court should have given these cautionary instructions to the jury with respect to certain statements that he made on the night of his arrest. Id. at 22.

Although the state appellate court found that the trial court's failure to instruct sua sponte pursuant to CALJIC numbers 2.71 and 2.71.7 was erroneous, it concluded that Petitioner was not entitled to relief because he was not prejudiced by the error. Resp. Ex. E at 2-3. The appellate court noted that '[t]he People do not dispute that the trial court should have instructed with the instructions [Petitioner] has identified," because his out of court statements fell within the purview of the instructions. Id. at 2. However, the appellate court reasoned that "[a] court's failure to provide the cautionary instructions is not reversible error 'if upon a reweighing of the evidence it does not appear reasonably probable that a result more favorable to defendant would have been reached in the absence of the error'" Id. at 3 (citing People v. Stankewitz, 51 Cal.3d 72, 94 (1990) (quoting People v. Beagle, 6 Cal.3d 441, 455 (1972))). The appellate court stated that "[i]n assessing potential prejudice, we must keep in mind that the 'primary purpose of the cautionary instruction[s]'" is to help the jurors determine whether the statement was made at all. Id. (citing to Stankewitz, 51 Cal.3d at 94). The appellate court concluded that because petitioner made similar statements during his

---

statement tends to prove [his] [her] guilt when considered with the rest of the evidence.

[¶]You are the exclusive judges as to whether the defendant made an admission, and if so, whether that statement is true in whole or in part.

[¶][Evidence of an oral admission of [a] [the] defendant not made in court should be viewed with caution.]"

3. CALJIC No. 2.71.7 states:

Evidence has been received from which you may find that an oral statement of [intent] [plan] [motive] [design] was made by the defendant before the offense with which [he] [she] is charged was committed.

[¶]It is for you to decide whether the statement was made by [a] [the] defendant.

[¶]Evidence of an oral statement ought to be viewed with caution.

testimony at trial and did not deny making the out-of-court statements, Petitioner was not prejudiced by the trial court's failure to instruct the jury as to whether Petitioner actually made the statements. Id.

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.  See Estelle v. McGuire, 502 U.S. 62, 72 (1991); Cupp v. Naughten, 414 U.S. 141, 147 (1973); see also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some [constitutional right].'").  The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  See Estelle, 502 U.S. at 72.  In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process.  United States v. Frady, 456 U.S. 152, 169 (1982) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977)); Prantil v. California, 843 F.2d 314, 317 (9th Cir.), cert. denied, 488 U.S. 861 (1988); see e.g., Middleton v. McNeil, 541 U.S. 433, 434-35 (2004) (per curiam) (no reasonable likelihood that jury misled by single contrary instruction on imperfect self-defense defining "imminent peril" where three other instructions correctly stated the law).

The omission of an instruction is less likely to be prejudicial than a misstatement of the law. See Walker v. Endell, 850 F.2d 470, 475-76 (9th Cir. 1987) (citing Henderson v. Kibbe, 431 U.S. at 155).  Thus, a habeas petitioner whose claim involves a failure to give a particular instruction bears an "'especially heavy burden.'"  Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997) (quoting Henderson v. Kibbe, 431 U.S. at 155).  The significance of the omission of such an instruction may be evaluated by comparison with the instructions that *were* given.  Murtishaw v. Woodford, 255

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.06\Lazo732den            6

F.3d 926, 971 (9th Cir. 2001) (emphasis added) (quoting Henderson, 431 U.S. at 156); see id. at 972 (due process violation found in capital case where petitioner demonstrated that application of the wrong statute at his sentencing infected the proceeding with the jury's potential confusion regarding its discretion to impose a life or death sentence).

In light of the fact that he made similar statements during his testimony and he did not dispute the fact that he made the out-of-court statements, Petitioner was not prejudiced by the trial court's failure to provide the cautionary instructions. The instructions directed the jury to exercise caution when considering out-of-court statements made by the defendant, in order to help it determine whether the out-of-court statements actually were made. In the absence of a dispute as to whether Petitioner made the particular statements, the failure to give the cautionary instructions could not have resulted in any prejudice. Accordingly, the state appellate court's determination was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

2. <u>Trial Court's Alleged Failure to Instruct on the Lesser-Included Offense of Battery</u>

Next, Petitioner claims that the trial court erred by failing to instruct the jury on battery as a lesser-included offense of robbery, thereby denying him his federal constitutional rights to due process, a fair trial, and a jury trial. Petition at 30. Specifically, Petitioner contends that because it was alleged that he committed the robbery by using force *and* fear, the court was "obligated to instruct on battery under the accusatory pleading test." Resp. Ex. E at 4 (emphasis added).

The state appellate court set forth the accusatory pleading test as follows: "[a] lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense,

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.06\Lazo732den           7

such that the greater offense cannot be committed without also committing the lesser." Id. at 3 (citing People v. Birks, 19 Cal.4th 108, 117 (1998)). The court noted the definition of robbery under California Penal Code section 211[4], and observed that robbery could be accomplished by force *or* fear. Id. at 3-4 (emphasis added). It then reviewed the definition of battery under California Penal Code section 242[5] and found that battery did not have an element of "fear," but that robbery did. Id. The appellate court concluded that, because robbery could be committed without *also* committing a battery, battery was not a lesser included offense, and thus no instruction on the lesser-included offense was warranted. Id. (emphasis added).

The failure to instruct on a lesser-included offense in a capital case is constitutional error if there was evidence to support the instruction. See Beck v. Alabama, 447 U.S. 625, 638 (1980); Turner v. Marshall, 63 F.3d 807, 818 (9th Cir. 1995), overruled on other grounds by Tolbert v. Page, 182 F.3d 677, 685 (9th Cir. 1999) (en banc).[6] Generally, however, the failure of a state trial court to instruct on lesser-included offenses in a non-capital case does not present a federal constitutional claim. See Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000); Windham v. Merkle, 163 F.3d 1092, 1105-06 (9th Cir. 1998); Turner, 63 F.3d at 819 (citing Bashor v. Riley, 730 F.2d 1228, 1240 (9th

---

4. California Penal Code section 211 states:

Robbery defined. Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.

5. California Penal Code section 242 states:

Battery defined. A battery is any willful and unlawful use of force or violence upon the person of another.

6. It appears that Beck may not even apply to capital cases in California because California, unlike the State of Alabama in Beck, has not "'erected an artificial barrier that restrict[s] its juries to a choice between conviction for a capital offense and acquittal.'" Anderson v. Calderon, 232 F.3d 1053, 1082 (9th Cir. 2000) (quoting Hopkins v. Reeves, 524 U.S. 88, 96 (1998)).

Cir.), cert. denied, 469 U.S. 838 (1984)); cf. Vickers v. Ricketts, 798 F.2d 369, 371 (9th Cir. 1986) (where evidence supports lesser-included-offense instruction in capital case, due process requires that court give instruction sua sponte), cert. denied, 479 U.S. 1054 (1987).

Nonetheless, "the defendant's right to adequate jury instructions on his or her theory of the case might, in some cases, constitute an exception to the general rule." Solis, 219 F.3d at 929 (citing Bashor v. Risley, 730 F.2d at 1240). Solis suggests that there must be substantial evidence to warrant the instruction on the lesser-included offense. See Solis, 219 F.3d 929-30 (no duty to instruct on voluntary manslaughter as lesser-included offense to murder because evidence presented at trial precluded a heat of passion or imperfect self-defense instruction; no duty to instruct on involuntary manslaughter because evidence presented at trial implied malice); see also Cooper v. Calderon, 255 F.3d 1104, 1110-11 (9th Cir. 2001) (no duty in death penalty case to instruct on second degree murder as a lesser included offense because the evidence established that the killer had acted with premeditation, so if the jury found that the defendant was the killer, it necessarily would have found that he committed first degree murder). Where there is a reasonable likelihood that a jury has applied an instruction in a way that violates due process and fundamental fairness, a conviction should be overturned. Boyde v. California, 494 U.S. 370, 380 (1990). It is important to note that "…not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." Middleton v. McNeil, 541 U.S. 433, 437 (2004). A violation of due process does not occur unless the error resulted in a "complete miscarriage of justice." Hill v. United States, 368 U.S. 424, 428 (1962).

As a general rule, federal courts must instruct the jury on a lesser-included offense if the evidence presented at trial would permit a rational jury to conclude that the defendant was guilty of the lesser offense but not guilty of the greater offense. Beck, 447 U.S. at 635. Adopting the

statutory elements approach does not alter the Beck requirement.  Schmuck v. United States, 489 U.S. 705, 716 (1989).  Under the statutory elements test, one offense is not included in another unless the elements of the lesser offense are a subset of the elements of the charged offense.  Id. If the lesser offense has an element that is not required for the greater offense, no instruction need be given.  Id.  Put differently, if the greater offense can be accomplished without also committing the lesser offense, no instruction is needed.  Id.

Here, the state appellate court applied the accusatory pleadings test and concluded that no instruction on battery was required because it was not a lesser-included offense of robbery.  Resp. Ex. E at 4.  This test comports with the federal standard set forth in Schmuck.  489 U.S. at 716. Pursuant to the California Penal Code, a robbery can be committed without necessarily committing a battery, and therefore no instruction on battery as a lesser-included offense of robbery was required. The trial court's failure to give the lesser-included instruction thus did not result in any due process violation.  Accordingly, the Court concludes that the state appellate court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2).

    3.    <u>Trial Court's Instruction on the Lesser-Included Offense of Assault</u>

Petitioner claims that the trial court erred by instructing the jury that assault was a lesser-included offense of grand theft, thus violating his federal constitutional right to due process under the Fourteenth Amendment.  Petition at 41.  Petitioner contends that the trial court should have informed the jurors that assault was a lesser-included offense of *robbery*.  Id. (emphasis added).  On direct appeal, Petitioner asserted that this error "likely led the jury to stop their consideration of lesser offenses after rejecting a verdict of grand theft, and to fail even to consider the instruction on the lesser included offense of assault."  Resp. Ex. E at 5.

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.06\Lazo732den        10

The state appellate court concluded that the trial court misstated the law by instructing the jury that assault was a lesser-included offense of grand theft, but rejected Petitioner's argument that the trial court should have instructed the jurors that assault was a lesser- included offense of robbery. Id. The appellate court applied the statutory elements test and the accusatory pleading test to determine that assault is not a lesser-included offense of robbery, and thus no such instruction was required. Id. (citing People v. Wright, 52 Cal. App.4th 203, 209 (1996)).

Although the trial court misstated the law by instructing the jury that assault was a lesser-included offense of grand theft, the appellate court found that the error was not prejudicial because it was not reasonably likely that the jury misapplied the erroneous instruction. Resp. Ex. E at 5 (citing People v. Kelly, 1 Cal.4th 495, 525 (1992) (citing Boyde v. California, 494 U.S. 370 (1990)). The appellate court observed that the trial court "told the jurors they might 'find it productive to consider and reach a tentative conclusion on all charges and lesser crimes before reaching any final verdict.'" Id. Finally, the court reasoned that the trial court's error was not prejudicial because there was no "reason why the jurors would stop deliberating and ignore the assault instruction after rejecting the grand theft charges." Id.

As discussed above, to obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. See Estelle v. McGuire, 502 U.S. at 72; Cupp v. Naughten, 414 U.S. 141, 147 (1973); see also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some [constitutional right].'"). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. See Estelle, 502 U.S. at 72.

A jury instruction that incorrectly describes or omits an element of an offense is subject to

"harmless error" analysis. California v. Roy, 519 U.S. 2, 5 (1996) (omission of "intent" element from aiding and abetting instruction subject to harmless error analysis where jury could have found intent based on evidence it considered). Under this analysis, an instructional error will be found harmless unless it "'had substantial and injurious effect or influence in determining the jury's verdict.'" Roy, 519 U.S. at 4 (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)); see also Roy v. Gomez, 108 F.3d 242, 242 (9th Cir. 1997) (on remand after California v. Roy).

In Petitioner's case, the appellate court considered all of the mitigating and aggravating factors and concluded that no prejudice resulted from the misstated instruction. Resp. Ex. E at 5. The court reasoned as follows:

> Appellant now contends that the trial court instructed the jury incorrectly when it told the jurors assault was a lesser included offense of grand theft. According to appellant, the court should have told the jurors that assault as charged was a lesser offense of robbery.
>
> We reject this argument for two reasons. First, it is based on a false premise. Assault is not a lesser included offense of robbery either under the statutory elements test (*People v. Wright, supra,* 52 Cal.App.4th at p. 209), or the accusatory pleading test when, as here, the force and fear elements are alleged in the conjunctive. (*Id.* at p. 211.)
>
> Second, while the court did misstate the law when it told the jurors assault was a lesser included offense of grand theft, (a point the People concede) the error was not prejudicial.
>
> Appellant contends the misinstruction harmed him because it "likely led the jury to stop their consideration of lesser offenses after rejecting a verdict of grand theft, and to fail even to consider the instruction on the lesser included offense of assault, because there was little if any evidence that appellant only committed grand theft..." Appellant has not articulated any reason why the jurors would stop deliberating and ignore the assault instruction after rejecting the grand theft charges. Indeed, doing so would have been inconsistent with a different instruction. The court told the jurors they might "find it productive to consider and reach a tentative conclusion on all charges and lesser crimes before reaching any final verdict." We conclude it is not reasonably likely the jurors misapplied the instruction as appellant suggests. (*People v. Kelly,* (1992) 1 Cal.4th 495, 525.) The court's error was harmless.

Resp. Ex. E at 5.

As the appellate court noted, the trial court advised the jurors that they could consider and reach tentative conclusions on all charges and lesser-included offenses, including assault, before reaching any final verdict. The appellate court also emphasized that Petitioner did not articulate any reason why the erroneous instruction would cause the jurors to ignore the lesser charges. This Court concludes that Petitioner has failed to show that the instructional error resulted in a "substantial and injurious effect or influence in determining the jury's verdict.'" Brecht, 507 U.S. at 637. Accordingly, it also concludes that the state appellate court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

        4.       <u>Prosecutorial Misconduct</u>

Petitioner contends that his constitutional rights to due process and a fair trial under the Fourteenth Amendment were violated by the prosecutorial misconduct at trial. Petition at 45. Specifically, Petitioner asserts that the prosecutor impugned defense counsel's integrity and argued that defense counsel had manufactured a defense in closing argument. Id.

The appellate court cited to the relevant portions of the prosecutor's closing argument as follows:

> "It's pitiful to have the defendant himself get up on the stand and say I remember doing all of this stuff up to this point but then I don't remember, I don't remember, I don't remember, I don't remember and I don't remember. That's it. But that's his only defense. I put to you it's his only defense. Why? Because there are really only three defenses that are presented in criminal cases. One, the victim chose to lie. It didn't happen. Two, it wasn't me. Three, it was me, but there's an excuse. Was there ever an instance where [defense counsel] put to [the victim] that she was a liar? No. Is this a case of identification? No. The man before you here was the man that had her jewelry, who robbed her, and was identified on the

>street minutes afterwards by Guadalupe. It's not an I.D. case. It's not. It's not a who done it. What's left [,] Mr. [defense counsel]? We have to attack these things. One of the elements of robbery. What can we do? I know. You were too loaded to understand what you were doing." (Italics added.)
>
>"Okay. So Mr. Lazo will have you believe from the stand while under oath, he says, no, I don't remember anything. I remember drinking nine beers. I remember Rene there. I remember [Micoya]. Fired up a joint and I smoked it. And then another one. And then a third one. And then I got loaded. So that's where they attempt to attack. You see all the eggs then are in the basket. The eggs are the other elements necessarily are conceded." [ Sic ]
>
>The prosecutor returned to the same theme during the rebuttal portion of his final argument, "Remember I told you [defense counsel] put all those eggs in one Easter basket. [We're] still with that Easter Basket. [We're] still with those eggs. He wants you to believe that based upon the testimony of his client that you should acquit him....[¶] Members of this jury, it is difficult to find something that is not there. That's what [defense counsel] wants you to hang your hat on."

Resp. Ex. E at 5-6.

In rejecting Petitioner's argument on the merits, the appellate court stated:

>It is improper for a prosecutor to attack the integrity of defense counsel or cast aspersions on him.  (*People v. Hill* (1998) 17 Cal.4th 800, 832.)  To prevail on a claim of prosecutorial misconduct based on remarks to the jury, an appellant must show a reasonable likelihood that the jury understood or applied the complained-of comments in an improper or erroneous manner.  (*People v. Frye, supra,* 18 Cal.4th at p. 970.)  In conducting that inquiry, we 'do not lightly infer' that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.  (*People v. Howard* (1992) 1 Cal.4th 1132, 1192.)

Id. at 6.

Petitioner argued that the prosecutor attacked defense counsel's integrity by stating, "[w]hat's left Mr. [defense counsel]?  We have to attack these things.  One of the elements of robbery.  What can we do?  I know.  You were too loaded to understand what you were doing."  Id. Petitioner also argued that the prosecutor's comments implied that defense counsel "conjured up a defense of a lack of an element [of the crime charged], then suborned perjury from [Petitioner]."  Id. The appellate court noted that Petitioner's interpretation of the prosecutor's comments as an attack on defense counsel's integrity was not the only, nor the most reasonable, interpretation.  Id.  Here,

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.06\Lazo732den            14

the appellate court declined to "lightly infer" that the jury drew the most damaging meaning from the prosecutor's statements." Id. (citing People v. Howard, 1 Cal.4th 1132, 1192 (1992)). The appellate court concluded that Petitioner's argument "greatly overstate[d] the probable effect of the prosecutor's comment," and that it was not "reasonably likely that the jurors understood or applied the complained-of comments in an improper or erroneous manner." Id.

Prosecutorial misconduct is cognizable on federal habeas corpus. The appropriate standard of review is the narrow one of due process and not the broad exercise of supervisory power. Darden v. Wainwright, 477 U.S. 168, 181 (1986). A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." Id.; Smith v. Phillips, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor"). Under Darden, the first issue is whether the prosecutor's remarks were improper; if so, the next question is whether such conduct infected the trial with unfairness. Tan v. Runnels, 413 F.3d 1101, 1112 (9th Cir. 2005). A prosecutorial misconduct claim is decided "'on the merits, examining the entire proceedings to determine whether the prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995) (quoting Stovall v. Denno, 388 U.S. 293, 301-02 (1967), cert. denied, 516 U.S. 1017 (1995)). Therefore, the proper focus is not on the conduct of the prosecutor, but whether the trial was fair. Smith, 455 U.S. at 219.

Here, the prosecutor's comments during closing arguments did not infect Petitioner's trial with such unfairness that the conviction resulted in a denial of due process. Darden, 477 U.S. 168. The appellate court properly observed that there were other reasonable interpretations of the prosecutor's remarks. Resp. Ex. E at 6. Petitioner thus fails to establish that the prosecutor's statements resulted in a denial of due process. Accordingly, the Court concludes that the state

appellate court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

5.   <u>Ineffective Assistance of Counsel</u>

Finally, Petitioner claims his trial counsel was ineffective, thus depriving him of his Sixth Amendment rights. Petition at 51. Petitioner maintains that defense counsel was ineffective because he made illusory promises in his opening argument that "Jessica" would testify at trial. <u>Id</u>.

The appellate court noted the relevant portions of defense counsel's opening statement as follows:

> [A]t some point that night as he's walking around the Mission with his friend smoking this [PCP] cigarette, he runs into another friend of his, Jessica Gonzalez. Now, Jessica has been clean and sober for some time now, but she knows what Mr. Lazo is like when he's under the influence of PCP because she has smoked PCP with him. So she's familiar with the objective signs that Mr. Lazo exhibits when he's using PCP. And she will tell you what those signs are, what she observed, and what she saw.

Resp. Ex. E at 7.

During his testimony at trial, Petitioner "testified that he encountered a woman named Jessica Artiles [footnote omitted] on the night of the crime." <u>Id</u>. Petitioner testified that "he had smoked PCP with Artiles previously and that she urged him to go home." <u>Id</u>. Defense counsel never called Gonzalez or Artiles as a witness. <u>Id</u>.

During closing arguments the prosecutor responded to defense counsel's earlier statements as follows:

> There was a promise of Jessica appearing to tell us something but she did not appear. You didn't hear anything from Jessica...I put it to you that [Petitioner's] testimony is worthless. That means [Petitioner's] commentary about his PCP use is worthless. He has nothing to support it. It's worthless. If he had brought someone in, this Jessica, what happened to Jessica? As [defense counsel] will tell you at the beginning you heard from Jessica. She saw Jimmy Lazo on the street. She knew he was on PCP. Where's Jessica? She didn't come through the doors. She didn't take an oath. She didn't testify. Does she even exist? Well, she

> wasn't here and you cannot speculate, but I make this comment that if there was going to be some defense witness that will provide information that he was under the influence of PCP that night, they didn't arrive in this courtroom and they didn't give evidence to you. The only person who's done that is the defendant.

Resp. Ex. E at 7.

In reviewing Petitioner's claim of ineffective assistance of counsel, the appellate court noted:

> A party who contends he received ineffective assistance has the burden of proving that (1) trial counsel's performance was deficient in that it fell below an objective standard of reasonableness when measured by prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different (*People v. Ledesma* (1987) 43 Cal.3d 171, 215-218.) Furthermore, an appellant who alleges ineffective assistance on direct appeal bears an especially heavy burden of proof: "'[if] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] ... unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation,' the claim on appeal must be rejected. [Citations.]" (*People v. Wilson* (1992) 3 Cal.4th 926, 936, quoting *People v. Pope* (1979) 23 Cal.3d 412, 426; see also *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 267.)

Resp. Ex. E at 7.

In rejecting Petitioner's claim on the merits, the appellate court reasoned as follows:

> Here, there is plausible reason why [defense] counsel may have mentioned 'Jessica's' testimony during his opening statement but then failed to call her at trial. Perhaps counsel learned that Jessica could not truthfully provide the testimony he had anticipated. Since counsel's conduct can reasonably be explained, we cannot conclude he was ineffective...While failing to name anticipated witnesses would have the advantage [Petitioner] describes, it would also have considerable disadvantages.
> The opening statement provides the defense with the opportunity to educate the jurors about the defense that will be provided...Whether the benefits of providing an opening statement outweigh the potential disadvantages is a matter that we decline to 'second guess' on appeal.

Id. at 8.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees *effective assistance* of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984) (emphasis added). The benchmark for judging any claim of

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.06\Lazo732den          17

ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. Id.

A claim of ineffective assistance of counsel requires two separate showings. First, Petitioner must establish that counsel's performance was deficient. Strickland, 466 U.S. at 687. To be deficient, counsel's representation must fall "below an objective standard of reasonableness." Id. at 687-688. "Judicial scrutiny of counsel's performance must be highly deferential," and there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Second, Petitioner must demonstrate that he was prejudiced by counsel's deficient performance. Id. at 687. Prejudice is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." Id. at 694.

A difference of opinion as to trial tactics does not constitute denial of effective assistance. United States v. Mayo, 646 F.2d 369, 375 (9th Cir. 1981), cert. denied, 454 U.S. 1127 (1981). Furthermore, tactical decisions are not ineffective assistance simply because in retrospect better tactics are known to have been available. Bashor v. Risley, 730 F.2d 1228, 1241 (9th Cir. 1984), cert. denied, 469 U.S. 838 (1984); see also Brodit v. Cambra, 350 F.3d 985, 994 (9th Cir. 2003) (state court reasonably concluded that trial attorney provided effective assistance of counsel where attorney declined to present evidence favorable to defense out of concern that it would open door to unfavorable evidence).

The Court concludes that Petitioner has failed to demonstrate that but for defense counsel's promises during his opening statement, the result of his trial would have been different. Petitioner has not shown that defense counsel's representation fell "below an objective standard of reasonableness." Strickland, 466 U.S. at 687-89. As the appellate court observed, there were

plausible tactical reasons why defense counsel might have elected not to call "Jessica" as a witness. Resp. Ex E at 8. Accordingly, the Court concludes that the state appellate court's determination was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

## CONCLUSION

The Court concludes that Petitioner has failed to show any violation of his federal constitutional rights in the underlying state criminal proceedings. Accordingly, the petition for writ of habeas corpus is DENIED. The Clerk shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: 4/3/08

JEREMY FOGEL
United States District Judge

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.06\Lazo732den          19